UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF YONADAV HIRSHFELD, | ) |
| by and through its administrator, Michael Engelberg, | ) |
| ELISHEVA HIRSHFELD, individually. and as the | ) |
| natural guardian of minor plaintiffs | ) |
| E. S. H., | ) |
| E. H., | ) |
| and S. H., | ) |
| ZEMACH HIRSHFELD, individually, and as the | ) |
| natural guardian of minor plaintiffs | ) |
| E.S.H., | ) |
| E.H., | ) |
| and S.H., | ) |
| SHALOM HIRSHFELD | ) |
| NECHEMYA HIRSHFELD | ) |
| AMIEL HIRSHFELD | ) |
| ZIMRAT BRACHA (HIRSHFELD) ZUKERMAN, | ) |
| HAYA HAMITAL (HIRSHFELD) HACOHEN-NOVICK, | ) |
| YEDIDYA HIRSHFELD, | ) |
| HANA (HIRHSFELD) SHANDORFY, | ) |
| DAVID YINON HIRSHFELD, | ) |
| AVIYA (HIRSHFELD) FREEDMAN, | ) |
| | ) |
| | ) |
| Plaintiffs           , | ) |
| | ) |
| v. | ) Case No. 18-cv-1982 |
| | ) JURY TRIAL DEMANDED |
| THE BANK OF CHINA LIMITED, | ) |
| | ) |
| Defendant. | ) |

COMPLAINT

1. This action is brought pursuant to the Antiterrorism Act, 18 U.S.C. Sections 2331 et seq., and supplemental causes of action by the Estate, heirs, survivors, and immediate family

1

members of Yonadav Hirshfeld, a United States citizen, who was killed in a terrorist shooting sponsored, materially supported, and caused by defendant on March 6, 2008, while attending school at the Mercaz Harav Yeshiva in Jerusalem, Israel.  This terrorist attack (hereinafter "the Terrorist Shooting") came to be known as the Mercaz Harav massacre.  In addition to the eight individuals killed, many others were wounded.

2. Yonadav Hirshfeld, 18 years of age at the time, was one of eight unarmed students killed by gunshots fired by a terrorist operative, Alaa Abu Dhein, acting on behalf of the terrorist organization Hamas.

3.  This action seeks damages directly and proximately caused by defendant Bank of China to plaintiffs, by reason of acts of unlawful international terrorism, as defined in 18 U.S.C. Section 2331, and by reason of providing material support and resources for the Terrorist Shooting, and by reason of aiding and abetting the Terrorist Shooting, and for related unlawful tortious behavior entitling the plaintiffs to an award of damages as shall be proven at the trial of this action.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter and over Defendants pursuant to 18 U.S.C. Sections 2333 and 2334, 28 U.S.C. § 1331, and pursuant to principles of supplemental jurisdiction as stated in 28 USC Section 1367.

5. This District is the proper venue pursuant to 18 U.S.C. Section 2334.

## THE PARTIES

6. Plaintiff Elisheva Hirshfeld is the mother of decedent Yonadav Hirshfeld. She was at all relevant times and is still a United States citizen resident in Israel. She brings this action in her own right and on behalf of three of her minor children.

7. Plaintiff Zemach Hirshfeld is the father of decedent Yonadav Hirshfeld. He was at all relevant times and still is a United States citizen resident in Israel. He brings this action in his own right and on behalf of his three minor children.

8. Decedent Yonadav Hirshfeld was a United States citizen resident in Israel at the time of his death. He was studying the Torah in the Mercaz Harav Yeshiva in Jerusalem. He was an extremely bright and talented young man, well-liked by many friends, and beloved by all his family.

9. Plaintiffs Zimrat Bracha (Hirshfeld) Zukerman, Haya Hamital (Hirshfeld) Hacohen - Novick, Yedidya Hirshfeld, Hana (Hirshfeld) Shandorfy, David Yinon Hirshfeld, Aviya (Hirshfeld) Freedman, Shalom Hirshfeld, Nehemiya Hirshfeld, Amiel Hirshfeld, E.S.H, E. H., and S.H. are brothers and sisters of Yonadav Hirshfeld, and are all United States citizens resident in Israel. Plaintiffs E.S.H., E.H., and S.H. are under eighteen at the time of the filing of this Complaint, and their father, plaintiff Zemach Hirshfeld, and mother, Elisheva Hirshfeld, bring this action on their behalf as natural guardians of their minor children.

10. Plaintiff Dr. Michael Engelberg is a resident of New York State and has been appointed to be the personal representative of the Estate of Yonadav Hirshfeld.

11. Defendant Bank of China Limited ("BOC") is a corporation organized under the laws of the People's Republic of China ("PRC"). It has branches/offices in New York, Chicago, and

Los Angeles, and conducts extensive business in New York State and throughout the United States, and holds significant assets in the United States. One or more of its New York branches/offices participated in the transfers of funds that helped facilitate the terrorist attack that took the life of Yoanadav Hirshfeld. Defendant BOC provided material support and resources to Hamas and performed other actions that caused the Terrorist Shooting and harm to the Plaintiffs herein.

## FACTS

### Hamas

12. Since 1997 and at all times relevant to this litigation, Hamas has been listed by the United States Department of State as a Foreign Terrorist organization ("FTO").

13. Hamas is a radical terrorist organization that openly declares its goals of create an Islamic state covering the entire territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve these goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas uses terrorism to coerce, intimidate and influence the Israeli government and public and thereby bring about the eventual eradication of the State of Israel, its replacement with an Arab state, and the murder and/or expulsion of the Jewish residents of the State of Israel.

14. Hamas is listed as a Specially Designated Global Terrorist ("SDGT") pursuant to Executive Order # 13224.

15. Hamas has been listed as an SGDT since October 31, 2001 and was so listed at all times relevant to this litigation.

16. Since 2003, United States courts reached and published numerous decisions finding that Hamas was responsible for terrorist attacks in which United States citizens were killed and injured.  United States courts have also held the Islamic Republic of Iran directly responsible for such attacks by Hamas because of its provision of material support and resources to Hamas.  Iran is not named as a defendant herein, but Plaintiffs have brought an action against Iran arising from the same terrorist attack in the United States District Court for the District of Columbia.

17.  Between 1999 and March 6, 2008, the annual <u>Patterns of Global Terrorism Report</u> published by the United States Department of State consistently reported that Hamas was responsible for terrorist attacks in which United States citizens were killed or injured. Hamas's practice of carrying out terrorist attacks like the Terrorist Shooting, and its designation as a terrorist organization, were and are well known to the public at large, including the Defendant

18.  On March 6, 2008, an agent or operative of Hamas, Alaa Abu Dhein, arrived at the Mercaz Harav yeshiva in Jerusalem, Israel, with an AK-47, also known as a Kalashnikov assault rifle.  He opened fire on unarmed Yeshiva students.

19.  Eight students were killed in the attack, including Yonadav Hirshfeld, and many more were injured.  Yonadav Hirshfeld was one of the first students shot, while he was standing outside the building.  After being shot, he fled inside and went down some stairs, but then collapsed.  By the time help reached him, he was dead.

20.  Hamas planned, made the preparations necessary for, and carried out the terrorist shooting.

21. Soon after the attack, the Reuters News Agency reported that an anonymous source placed responsibility for the attack on Hamas.

22. In response, a spokesman for Hamas stated that, unless a Hamas official signed a written statement claiming responsibility, no such responsibility could be ascribed "officially" to Hamas.

23. On December 10, 2010, Hamas published a "celebration" of its 23 years of existence and terrorism, entitled "The Path of Glory." In this publication, Hamas officially and formally claimed responsibility for the March 6, 2008 Mercaz Harav Terrorist Shooting. It provided many operational details of the Terrorist Shooting and named the attacker as a "martyr" of the Al Aqsa Brigades, Hamas' operational military arm.

## The Role of BOC

24. Hamas is subject to sanctions imposed by the United States as the result of its designation as an FTO and SDGT.

25. The purpose of these U.S. sanctions is to prevent Hamas from conducting banking transactions, and thereby limit its ability to plan, prepare, and carry out terrorist attacks. The United States sanctions regime against FTOs and SDGTs is effective when it is observed and enforced.

26. If all banks observed and enforced the United States sanctions regime, Hamas's ability to conduct banking activities would be severely limited, as would be its ability to plan, prepare, and carry out terrorist attacks. Indeed, nearly all banks and financial institutions observe

and enforce the U.S. sanctions intended to limit the ability of terrorist organizations to carry out their activities.

27. Hamas must therefore limit its banking activities to the few banks and financial institutions which do not observe and enforce the U.S. sanctions.

28. BOC is one of the few banks that did not observe or enforce the sanctions, and as a result, BOC became one of the banks of choice for Hamas and other terrorist organizations.

29. Beginning in July 2003, BOC began to provide extensive banking services to Hamas. Between 2003 and the date of the Terrorist Shooting, BOC conducted dozens of wire transfers for Hamas, totaling several million dollars. These dollar transfers were initiated by Hamas leadership in Iran, Syria, and other Middle eastern countries, and were executed by and through BOC's branches in the United States. Many of these transfers were made to account number 4750401-0188-150882-6 at a BOC branch in Guangzhou, China, in the name of S.Z.R. Alshurafa. The owner of the account, Said al-Shurafa, is a senior officer and agent both of Hamas and the Palestine Islamic Jihad terrorist organization. Other dollar transfers were made by Hamas via BOC's branches in the United States to another account belonging to al-Shurafa at the same BOC branch in Guangzhou, account number 4762307-0188-034456-6.

30. Pursuant to Hamas instructions, al-Shurafa effected the transfers identified above to the Hamas terrorist leadership in Israel, the West bank, and the Gaza Strip, for the purpose of planning, preparing for and executing terrorist attacks.

31. Hamas needed wire transfer and other banking services in order to plan, to prepare for, and to carry out terrorist attacks, including the Mercaz Harav Terrorist Shooting.

32. Provision of wire transfer services or other banking services to Hamas enabled Hamas to plan, to prepare for, and to carry out the attack.

33. Hamas carried out the transfers provide funds necessary for planning, preparing for and carrying out terrorist activity, including bombing attacks against civilians and the Terrorist Shooting at Mercaz Harav specifically.

34. The transfers substantially increased and facilitated Hamas' ability to carry out its terrorist activities, including the Terrorist Shooting.

35. The transfers were enabled, facilitated, and proximately caused by the conduct and banking activities of BOC described above. As a result of BOC's conduct, Hamas was able to transfer several million dollars in funds to its terrorist leadership in Israel, the West Bank, and the Gaza Strip, which substantially increased and facilitated Hamas' ability to plan and carry out terrorist attacks, including the Terrorist Shooting. The Terrorist Shooting was enabled, facilitated, and proximately caused by the conduct of BOC described herein.

36. Plaintiffs' injuries and harm suffered are the direct and proximate result of BOC's activities.

37. At all times, BOC had actual knowledge that the transfers were being made by and to Hamas and its operatives for the purpose of carrying out terrorist attacks, and that the transfers enhanced Hamas' ability to plan, prepare for and carry out such attacks. In April 2005, officials of the Israeli government met with officials of the Peoples Republic of China ("PRC") Ministry of Public Security and the PRC's central bank and told them that they knew of the transfers and that the transfers were being used by Hamas to enhance its ability to plan and carry out terrorist attacks. The Chinese officials conveyed the substance of these meetings to officials of the BOC

and informed the BOC of Israel's demand that the transfers stop. BOC received this information but continued making the transfers, nonetheless.

38. Even before being informed of these meetings and the demands of Israel to stop the transfers, BOC knew or should have known that the transfers were being made for the purpose of financing Hamas's terrorist activities. Among other things, the many of the transfers were made in cash, were made in frequent short intervals, and were often for sums just below round numbers, such as $99,960, $99,970, or $199,65. In addition, the transfers had no business or other apparent legitimate purpose.

39. The transfers were facially suspicious and/or irregular banking transactions, and BOC breached its statutory duties under applicable United States law and under the rules promulgated by the Financial Action Task Force to monitor, report, and refuse to execute such suspicious transactions. BOC also violated its statutory duties to know its customers and investigate suspicious activity. BOC either knew or should have known that al-Shurafa was a Hamas operative and that the transfers were being used to support terrorist activities such as the Terrorist Shooting.

FIRST CAUSE OF ACTION

ON BEHALF OF ALL PLAINTIFFS AGAINST DEFENDANT BANK OF CHINA

**International Terrorism Pursuant to 18 U.S.C. Section 2333 et seq.**

40. The preceding paragraphs are incorporated by reference as though fully set forth herein.

41. The actions of Defendant BOC subsequent to being informed after a meeting between PRC officials and Israeli officials that transfers were being made by BOC to Hamas for

the purpose of carrying out terrorist attacks and that the transfers enhanced Hamas' ability to plan, prepare for and carry out such attacks, and that Israel demanded that the transfers be stopped, constituted acts of international terrorism as defined in 15 U.S.C. section 2331.

42. The actions of defendant BOC constituted a violation of criminal laws of the United States, including, without limitation, the criminal provisions of 18 U.S.C. sections 2339A, 2339B, and 2339C, which prohibit the provision of material support and resources to terrorist organizations.

43. BOC's actions were dangerous to human life because it knew or should have known that Hamas is a violent terrorist organization with the avowed purpose of murdering innocent civilians to carry out its mission.

44. BOC's actions transcended national boundaries in terms of the means by which they were accomplished, the persons they appeared intended to intimidate or coerce, and the locations in which BOC operated.

45. Subsequent to being informed of the meeting between PRC and Israeli officials in April 2005, BOC knowingly continued to carry out the transfers after being expressly warned of their purpose and of the consequences of its actions and asked to cease. That conduct created the external appearance that BOC shared Hamas' goals of intimidating and coercing a civilian population and of influencing the policy of a government by coercion and intimidation.

46. The PRC also considers itself a potential rival and competitor of the United States. In order to strengthen its own position and undermine that of the United States, the PRC has attempted to acquire and has acquired substantial political and economic interests in the Middle East. To further its foreign policy goals the PRC have been willing to facilitate the ongoing

campaign of terrorism conducted by terrorist groups including Hamas. The PRC and BOC do so in order to influence the policy of the Israeli government and to intimidate the Israeli population.

47. Banking institutions such as the BOC are heavily regulated and influenced by the PRC government and by the PRC Communist Party.

48. At all times, including the period during which it carried out the transfers, defendant BOC acted to advance the Communist party's and the PRC's governments' policies and goals with respect to Hamas and its terrorist activities.

49. BOC carried out the transfers, and refused to halt the transfers, because BOC acted in accordance with the directions of the Party and Government so as to facilitate the use of terrorism by Hamas to intimidate the Israeli government and population.

50. The actions of BOC subsequent to April 2005 appear to be intended, and were in fact intended, to intimidate and coerce a civilian population, and to influence the policy of a government by intimidation and coercion.

51. Decedent Yonadav Hirshfeld was murdered in the Terrorist Shooting. His murder caused him, his estate, and all other named plaintiffs--his mother, father, and siblings--severe injury, including conscious pain and suffering, pecuniary loss and loss of income, loss of guidance, companionship and society, loss of consortium, severe emotional distress and mental anguish, and solatium.

52. Defendant BOC is therefore liable for all of plaintiffs' damages in such sums as may hereafter be determined, to be trebled pursuant to 18 U.S.C. Section 2333(a).

53. Alternatively Defendant BOC is liable for all of plaintiffs' damages for aiding and abetting international terrorism under 18 U.S.C. Sections 2331 and 2333, in such sums as may hereafter be determined, to be trebled pursuant to Section 2333(a).

SECOND CAUSE OF ACTION

ON BEHALF OF ALL PLAINTIFFS AGAINST BANK OF CHINA

**Loss of Consortium and Solatium**

53. The preceding paragraphs are incorporated by reference as though fully set forth herein.

54. As a result and by reason of the death of Yonadav Hirshfeld caused by the acts of Defendant, his parents plaintiffs Elisheva and Zemach Hirshfeld, and his siblings plaintiffs Zimrat Bracha (Hirshfeld) Zukerman, Haya Hamital (Hirshfeld) Hacohen -Novick, Yedidya Hirshfeld, Hana (Hirshfeld) Shandorfy, David Yinon Hirshfeld, Aviya (Hirshfeld) Freedman, Shalom Hirshfeld, Nehemiya Hirshfeld, Amiel Hirshfeld, and minor plaintiffs E.S. H, E. H., and S. H., were deprived of the services, society, and consortium of Yonadav Hirshfeld, and have suffered and will continue to suffer severe mental anguish, bereavement, grief, and injury to their feelings.

55. Defendants are therefore fully liable, jointly and severally, for plaintiffs' damages, in such amounts as will be determined at trial.

56. Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

THIRD CAUSE OF ACTION

ON BEHALF OF ALL PLAINTIFFS AGAINST BANK OF CHINA

**Aiding and abetting liability under 18 U.S.C. Section 2333(d)(2)**

57. The preceding paragraphs are incorporated by reference as though fully set forth herein.

58. Defendant Bank of China aided and abetted the terrorist attack at issue in this case by knowingly providing substantial assistance to and by conspiring with persons who committed acts of international terrorism.

59. Defendant is therefore fully liable for plaintiffs' damages, in such amounts as will be determined at trial.

FOURTH CAUSE OF ACTION

ON BEHALF OF ALL PLAINTIFFS AGAINST BANK OF CHINA

**Negligence Under the Law of the State of Israel**

60. The preceding paragraphs are incorporated by reference as though fully set forth herein.

61. Pursuant to Fed. R. Civ. P. 44.1, plaintiffs hereby give notice of their intention to rely on the law of the State of Israel.

62. Defendant willfully and deliberately or wantonly and/or negligently authorized, organized, planned, provided material support for and executed the terrorist attack described above. Alternatively, Defendant failed to take ordinary care in averting, preventing, or stopping the attack, of which they had or should have had knowledge. Defendant committed acts that a reasonable and prudent person would not have committed in the circumstances or refrained from

committing acts which a reasonable or prudent person would have committed in the circumstances.  Defendant was therefore in violation of the Israeli Civil Wrongs Ordinance (new version) (1968), section 35.

63. Pursuant to section 36 of the CWO, defendant had duties and obligations under Israeli law to all persons to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the acts or omissions.  Defendant therefore owed duties to those who would be foreseeably harmed by their actions and inactions with respect to the terrorist attack described herein.

64. Defendant's behavior, acts, and inactions, constituted a breach of those legal duties.

65. Defendant foresaw, or should have reasonably foreseen, that that its actions and inactions would create unreasonable risk of injury and death to students at the Mercaz Harav Yeshiva, such as Yonadav Hirshfeld.

66. As a result of defendant's wrongful and/or negligent acts and inactions, Yonadav Hirshfeld was killed and all plaintiffs suffered severe injury, including pain and suffering, pecuniary loss, loss of guidance, companionship and solatium; severe emotional distress and mental anguish.

67. Defendant is therefore liable for the full amount of plaintiffs' damages, in amounts to be determined at trial.

68. Defendant's' conduct was outrageous in the extreme, wanton, willful and malicious, and constituted a threat to human life, and thus warrants punitive damages in an amount to be determined.

JURY DEMAND

69. Plaintiffs demand trial by jury of all issues.

WHEREFORE, Plaintiffs demand judgment against defendant BOC, as to each of the counts and causes of action enumerated above, as follows:

A. Compensatory damages in an amount to be determined at trial, but no less than $100,000,000 (one hundred million dollars);

B. Treble damages, costs and attorney fees as provided in 18 U.S.C. Section 2333;

C. Punitive damages;

D. Reasonable costs and expenses of this action;

E. Such further relief as the Court deems just, proper, and equitable.

Respectfully Submitted,

/s/ Daniel J. Scher
DANIEL J. SCHER (DJS 2418)
SCHER & SCHER, PLLC
55 Water Mill Lane
P.O. Box 376
Great Neck, NY 11021
(516) 482-1777
djs@scherlawyers.com

Asher Perlin
4600 Sheridan Street
Suite 303
Hollywood, Florida 33021
(954) 284-0900 ext. 102
asher@asherperlin.com

Paul G. Gaston

Law Office of Paul G. Gaston
1901 Pennsylvania Avenue, NW, Suite 607
Washington DC 20006
202-296-5856
paul@gastonlawoffice.com