August 17, 2018

<u>Via ECF & E-Mail</u>

The Honorable Katherine Polk Failla
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

   Re: *Estate of Yonadav Hirshfeld, et al. v. Bank of China Limited*, 18 Civ. 1982 (KPF)

Dear Judge Failla:

  Pursuant to this Court's Notice of Initial Pretrial Conference dated April 5, 2018 (Dkt #5), the parties jointly: (i) confirm they have met and conferred pursuant to Fed. R. Civ. P. 26(f); (ii) submit this letter providing the seven categories of information requested by the Court; and (iii) submit a proposed Civil Case Management Plan and Scheduling Order.

  (1) A brief statement of the nature of the action, the principal defenses thereto, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement, or dispositive motion.

  <u>Plaintiffs' Statement:</u> This is an action brought under the Anti-terrorism Act, as amended, 18 U.S.C. § 2331, *et seq.*, seeking damages for the Estate and survivors of Yonadav Hirshfeld, a young  American citizen, who was murdered in a terrorist attack at his school in Jerusalem, Israel. The Bank of China Ltd. is liable under the ATA and under common law for knowingly providing material support for the terrorist group, Hamas, which carried out the attack. Defendant is also liable under the 2016 Justice Against Sponsors of Terrorism Act ("JASTA"), which amended the Anti-terrorism Act to explicitly provide for civil actions against those who aid and abet or conspire with the terrorist organizations that carry out attacks.

  A 2015 Department of State report found that China is a leading source of illegal money transfers, and that it consistently fails to cooperate with other countries in resolving cross-border money laundering. "Dirty Dealing: China and International Money Laundering," Stanley Lubman, *Wall Street Journal*, July 13, 2015. As matter of policy, Defendant disregards its customers' involvement in terrorism, and other violent and financial crimes, and actively facilitates U.S. banking transactions by individuals, entities, and even rogue states that are legally barred from accessing the US banking system.

  In this case, Defendant effected numerous wire transfers from, between, and on behalf of Hamas and Hamas operatives, with knowledge that the transfers were being made by and for the benefit of a designated Foreign Terrorist Organization, and that the money was being used for terrorist operations like the attack in which Hamas murdered Yonadav Hirshfeld. Defendant entered into numerous agreements with Hamas and its other co-conspirators to violate United

States laws that prohibit the provision of material support, including financial and other services to Foreign Terrorist Organizations ("FTOs").

BOC's Answer includes a "Preliminary Statement" in which BOC discusses stipulations of dismissal filed in six separate lawsuits (the "Prior Lawsuits") against BOC based upon its provision of material support to Hamas and other Iran-financed terrorist organizations. Answer at 1-2. *Moriah v. Bank of China*, S.D.N.Y. No. 12-cv-01594, one of the Prior Lawsuits was brought by other American victims of the same terrorist attack in which Yonadav Hirshfeld was murdered. BOC argues that because the Prior Lawsuit plaintiffs stipulated—as part of their settlement agreement—that they had been unable to obtain admissible evidence of BOC's liability, the Hirshfeld Plaintiffs are somehow estopped from pursuing their claims.

As a matter of law, BOC's suggestion of estoppel is patently baseless. Plaintiffs cannot be estopped by stipulations filed by other plaintiffs in other litigation. Indeed, the dockets of the Prior Lawsuits and the near-simultaneously filed settlement stipulations demonstrate that the Hirshfelds' claims stand on firm ground. ***None*** of the Prior Lawsuits was resolved on motions to dismiss or for summary judgment. Rather, they were ***all*** resolved through stipulations that were clearly part of a negotiated and compensated settlement. The instant case, like those that preceded it, cannot be resolved on pretrial motions.

BOC defies logic and experience when it suggests that numerous plaintiffs in six separate lawsuits, each of whose claims survived motions to dismiss and, after years of litigation, were heading towards trials on the merits, would unanimously agree to dismiss their claims due to futility. The only sensible explanation for the dismissals is that the parties reached a settlement that compensated the plaintiffs for their injuries in exchange for their stipulations. This conclusion is further supported by the news coverage of the dismissals that state that the parties all refused to comment to the media about the stipulations[1]. Note also that the last significant record activity in the Prior Lawsuits were a series of discovery orders compelling BOC to produce significant materials.[2] Contrary to BOC's assertions of futility, had settlements not been reached in the Prior Lawsuits, those plaintiffs would have taken their claims to trial.

To the extent BOC relies on and cites to this Court ***some*** of the documentation relating to the stipulations of the prior plaintiffs, BOC should be compelled to disclose ***all*** of the documentation and terms relating to those stipulations. It is improper for BOC to selectively quote from some BOC-drafted, self-serving public docket entries (i.e., the stipulations) while concealing the terms of any agreements among the parties that led to those stipulations, and even implying that such agreements do not exist.

Plaintiffs will not argue through this letter the merits of BOC's anticipated motion for judgment on the pleadings. Most of BOC's defenses, including those discussed below, were considered and rejected by the six courts that heard the Prior Lawsuits, which itself demonstrates

---

[1] *See* https://www.jpost.com/Israel-News/Politics-And-Diplomacy/Exclusive-Historic-case-against-Bank-of-China-for-millions-in-terror-financing-dismissed-432381.

[2] The *Moriah* court entered discovery coordination orders directing that liability discovery among the *Moriah*, *Wultz*, and *Elmaliach* cases was to be conducted collectively. Accordingly, the discovery orders entered in *Wultz v. Bank of China*, S.D.N.Y. No. 11-CV-1266 are relevant to the instant case. *See Moriah*, no. 12-CV-1594 (Dkt ## 10, 11).

that the Plaintiffs state valid claims under the ATA. And, those cases were all closed before the enactment of JASTA, which **expands** the bases of ATA liability to include claims for aiding and abetting and conspiracy. *See* 18 U.S.C. § 2333(d).

<u>BOC's Statement</u>:  The terrorist attack that resulted in the death of Yonadav Hirshfeld and others is reprehensible and repugnant. However, BOC categorically denies that it sponsored, materially supported or caused that attack in any way.

Plaintiffs allege: (1) Said ZR al-Shurafa is "senior operative" of both Hamas and the Palestine Islamic Jihad; (2) BOC had "actual knowledge" that Shurafa was a Hamas operative and that he used a BOC account to transfer funds to Hamas' leadership; (3) BOC had "actual knowledge" because Israeli government officials met with Chinese government officials and told them about Shurafa, and the Chinese officials then told BOC; and (4) even if BOC did not have actual knowledge, it "should have known" that Shurafa was a senior Hamas operative.

There is no evidence that Shurafa was a terrorist. Shurafa has never been designated a terrorist by the U.S., the UN, the EU, the PRC, the State of Israel or any other international governmental organization or country. Plaintiffs parrot the allegations in a prior lawsuit, *Moriah v. Bank of China Limited*, No. 12-cv-01594 (S.D.N.Y.), which arose out of the same March 6, 2008 terrorist attack at issue here. In August 2015, after the close of broad fact discovery, the parties in the *Moriah* litigation filed a stipulation of dismissal and a stipulation of facts. *See* BOC's Answer, Exhibits 2 and 3. The *Moriah* plaintiffs acknowledged that they found *no evidence* that Shurafa "is or was a terrorist, was affiliated with terrorism, or financed terrorism." Plaintiffs try to discredit the stipulation, but they cannot rebut the key fact: there is no evidence Shurafa was a terrorist.

Nor can Plaintiffs offer any evidence to support their allegation that BOC knew Shurafa was a terrorist and he was supposedly using a BOC account to transfer funds to Hamas. During the parties' Rule 26(f) conference, we asked Plaintiffs how they plan to prove their actual knowledge allegations. They were not prepared to tell us. There is a reason why: they cannot prove those allegations. To the extent Plaintiffs believe the Government of Israel will prove their allegations, they are wrong.  The plaintiffs in the *Moriah* litigation and related lawsuits sought to depose multiple Israeli officials, and the State of Israel objected. Judge Scheindlin quashed the prior plaintiffs' subpoena to depose Mr. Uzi Shaya, a former Israeli intelligence official. There is no reason to think Israel will conduct an about-face and allow plaintiffs in a civil litigation to depose its former intelligence officials. Moreover, as Israel previously stated, its refusal to allow a former intelligence official to testify should not be misconstrued as agreement with Plaintiffs' allegations:

> That Israel declines Plaintiffs' invitation to sanction or rebut many of the asserted facts they seek from the Israeli Official … should not be misconstrued as acquiescing in Plaintiffs' presentation of facts. *Israel emphatically does not admit Plaintiffs' allegations*….

*See State of Israel v. Wultz*, 13-mc-1282-RBW (D.D.C.) (Dkt #31) (emphasis added).

After years of litigating, the Moriah plaintiffs filed a factual stipulation confirming they found no evidence that Shurafa was a terrorist, financed terrorism or that BOC was told by any government that Shurafa was a terrorist or affiliated with terrorism. The Moriah plaintiffs said that because it was—and is—true.

Plaintiffs' claims against BOC are not legally viable for the following reasons:

First, Plaintiffs' claims are non-justiciable under the political question doctrine. The *Moriah* stipulation of facts describes, in detail, a number of different forms of material evidentiary non-cooperation by the respective governments of the PRC, Israel and the U.S. *See* Answer Ex. 3 ¶¶ 4-8. The same evidentiary non-cooperation inevitably would occur in this litigation.

Second, this Court lacks personal jurisdiction over BOC. BOC is not subject to the Court's general jurisdiction under *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) and *Gucci America, Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) because BOC is a joint stock company organized under the laws of, and headquartered in, the PRC. *See* Complaint ¶ 11; Answer ¶ 11. BOC also is not subject to specific jurisdiction. As set forth in the *Moriah* factual stipulation: "The involvement of BOC's New York branch as an intermediary in processing the Shurafas' wire transfers was incidental to the underlying transaction between the Shurafas and their counterparties, and a routine aspect of international banking transactions." *See* Answer Ex. 3 ¶ 31.

Third, Plaintiffs fail to state a claim. To establish their first cause of action—primary liability under the ATA—Plaintiffs need to prove that BOC: (1) committed an act of international terrorism; (2) acted with a culpable state of mind; and (3) proximately caused plaintiffs' injuries. *See* 18 U.S.C. § 2333(a); *Hussein v. Dahabshiil Transfers Servs.*, 230 F. Supp. 3d 167, 170 (S.D.N.Y.), *aff'd*, 705 F. App'x 40 (2d Cir. 2017). Plaintiffs cannot establish any of those elements. As a threshold matter, Shurafa has never been designated a terrorist by any international governmental organization or country. After several years of broad fact discovery, the *Moriah* plaintiffs stipulated they found *no evidence* that: (a) Shurafa "is or was a terrorist, was affiliated with terrorism, or financed terrorism"; (b) BOC was told by any government that Said ZR Al Shurafa . . . was a terrorist, was affiliated with terrorism, or financed terrorism"; or (c) BOC "ever knowingly, deliberately, recklessly, or negligently provided financial services to terrorists." *See* Answer Ex. 3 ¶ 9.

Even if Shurafa was a terrorist and even if he was using a BOC account to transfer funds to Hamas operatives, that does not equate to an act of international terrorism. As the Second Circuit recently held, where, as here, a plaintiff seeks to impose primary liability on a bank under the ATA for providing financial services to alleged members or associates of a terrorist organization, "the provision of material support to a terrorist organization does not invariably equate to an act of international terrorism." *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 323-25 (2d Cir. 2018). Further, the "mere provision of 'routine banking services to organizations and individuals said to be affiliated with' terrorists does not necessarily establish causation." *Id*.

Plaintiffs' second cause of action—a claim for "Loss of Consortium and Solatium"—also fails. Loss of consortium and solatium is a category of damages, not a claim. *See Liff v. Schildkrout*, 49 N.Y.2d 622, 623-24 (1980). Even if it is construed as a wrongful death claim seeking damages

for loss of consortium and solatium, the claim would still fail because damages for loss of consortium and solatium are unavailable in the context of claims for wrongful death. *Id.* at 635. Further, Plaintiffs' claim would fail, as it is time barred under a two-year statute of limitation. *See* NY EPTL § 5-4.1; *Wultz v. Bank of China Ltd.*, 306 F.R.D. 112, 117 (S.D.N.Y. 2013).

Plaintiffs' third cause of action—aiding and abetting under the ATA—is equally unsupportable. To prove an aiding and abetting claim, a plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury, (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and (3) the defendant must knowingly and substantially assist the principal violation." *See Linde*, 882 F.3d at 329 (internal quotations omitted). Here, none of these elements can be proven. There is no evidence that Shurafa was a terrorist, that BOC knew that he was a terrorist, or that BOC knowingly and substantially assisted acts of terrorism.

Plaintiffs' fourth cause of action—negligence under Israeli law—fares no better. In the *Moriah* litigation, Judge Scheindlin held that the negligence claims were governed by PRC law, not Israeli law. *See Wultz v. Bank of China Ltd.*, No. 11-cv-1266, 2012 U.S. Dist. LEXIS 161399, at *4 (S.D.N.Y. Nov. 5, 2012). She dismissed such claims because they had no legal basis under PRC law. *Id.* at *11-19. Plaintiffs' negligence claim here will fail for exactly the same reasons.

(2) A brief explanation of why jurisdiction and venue lie in this Court.

Plaintiffs' Response: The Court has subject matter jurisdiction over this matter and over BOC pursuant to 18 U.S.C. Sections 2333 and 2334, 28 U.S.C. § 1331, and pursuant to principles of supplemental jurisdiction as stated in 28 USC Section 1367. Specifically, the Court may exercise personal jurisdiction over BOC under New York's long-arm statute, N.Y. C.P.L.R. 302(a) and under Fed. R. Civ. P. 4(k)(1) or 4(k)(2).

In, *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013), the court reversed a dismissal for lack of personal jurisdiction over a Lebanese bank that had processed terrorism-related transfers through *correspondent accounts at other banks* in New York. The case for personal jurisdiction is more compelling here because BOC processed the transfers through *its own* New York branch.

Notably, Section 2(a)(6) of JASTA specifically provides:

Persons, entities, or countries that knowingly or recklessly contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States or the national security, foreign policy, or economy of the United States, necessarily direct their conduct at the United States, and should reasonably anticipate being brought to court in the United States to answer for such activities.

114 P.L. 222, 130 Stat. 852, 2016 Enacted S. 2040, 114 Enacted S. 2040.

Venue is proper in this Court under 18 U.S.C. § 2334(a).

BOC's Response: This Court does not have personal jurisdiction over BOC as noted above.

(3) A statement of all existing deadlines, due dates, and/or cut-off dates.

There are no existing deadlines, due dates, or cut-off dates in this litigation.

(4) A brief description of all outstanding motions.

There are no outstanding motions in this litigation at this time. However, Plaintiffs intend to file an Amended Complaint, either with BOC's written consent or by leave of court. BOC intends to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(c). BOC also intends to file, if necessary, a motion to stay pending resolution of its dispositive motion.

(5) A brief description of any discovery that has already taken place, and that which will be necessary for the parties to engage in meaningful settlement negotiations.

Plaintiffs' Position: Discovery in this litigation has not yet begun. The parties will be able to engage in meaningful settlement negotiations after the defendant produces to the plaintiffs the entire set of discovery files from the Prior Lawsuits, which the Plaintiffs are requesting presently.

BOC's Position: Discovery is not necessary for the parties to engage in meaningful settlement negotiations.

(6) A statement describing the status of any settlement discussions and whether the parties would like a settlement conference.

The parties have engaged in settlement discussions by exchanging a series of preliminary emails. The parties are not seeking a settlement conference at this time.

(7) Any other information that the parties believe may assist the Court in advancing the case to settlement or trial, including, but not limited to, a description of any dispositive issue or novel issue raised by the case.

Plaintiffs' Position:  Plaintiffs believe that because BOC has previously engaged in the Prior Lawsuits, much relevant discovery has been produced and depositions of central witnesses have been conducted. These materials are available and in the possession of the Defendant. BOC can and should immediately produce to Plaintiffs all of these materials. Pursuant to Rule 26(e), BOC should supplement the discovery previously disclosed in the Prior Lawsuits. Defendant should be collaterally estopped from relitigating the prior discovery rulings in those Prior Lawsuits.

Production of those materials will not burden the Defendant. Production of those materials should also streamline discovery-related motion practice. BOC should have no objection to the production of those materials. The courts in the Prior Lawsuits, BOC stipulated to discovery coordinating orders pursuant to which discovery taken in one action was deemed taken for the

others as well. *Supra*, n. 2. BOC's immediate production of those materials will similarly streamline discovery in this case, reduce duplication, and conserve judicial and attorney resources.

BOC's Position:  For the reasons set forth in the proposed Case Management Plan, BOC proposes that discovery be stayed pending this Court's resolution of BOC's Fed. R. Civ. P. 12(c) motion.

Respectfully submitted,

/s/ Lanier Saperstein                              /s/ Paul G. Gaston

DORSEY & WHITNEY LLP                LAW OFFICES OF PAUL G. GASTON
51 West 51st Street                            1901 Pennsylvania Avenue, NW, Suite 607
New York, NY 10019                          Washington, DC 20006
212-415-9200                                     (202) 296-5856
*Attorneys for Bank of China Limited*      *Attorneys for Plaintiffs*